**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

*In re:*

CARLOS AUGUSTO ACOSTA,

Chapter 11
Subchapter V

Case No: 25-13288-LMI

_____Debtor._____/

### PLAN OF REORGANIZATION OF
### CARLOS AUGUSTO ACOSTA

**Submitted on June 25, 2025 by:**

> **Carlos Augusto Acosta**
> ***Debtor in Possession***

**Carlos Augusto Acosta** (the "Debtor" or "Mr. Acosta"),[1] as debtor-in-possession, by and through undersigned counsel, submits and proposes the following plan of reorganization (the "Plan") pursuant to sections 1189, 1190, and 1191 of 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"):

### BACKGROUND

A.    The Debtor.

Mr. Acosta is a married man who resides in Miami-Dade County, Florida.  Prior to his current marriage, Mr. Acosta was previously married and his divorce from his prior spouse became final in 2020 after several years of physical separation (the "Divorce"). The final judgment of divorce incorporated a mediated settlement agreement wherein the parties, through said agreement, divided their marital and respective assets, which included the following material assets:  (a) Mr. Acosta retained 100% interest in Repaintex Company ("Repaintex") with his former spouse

---

[1] Capitalized terms used in this Plan, along with the location of their respective definitions, are listed in Appendix 1.



**45 Almeria Avenue · Coral Gables, Florida 33134 · T. 305.722.2002 · www.agentislaw.com**

receiving an agreed upon income from Repaintex's net profits as her equitable distribution; (b) Mr. Acosta retained his current residence (which he had purchased subsequent to the physical separation with his former wife); (c) The former wife retained the former marital residence as well as use of and rental income from a jointly-owned residence in Virginia, from which, upon its sale, the mortgage of Mr. Acosta's personal residence would be paid; and (d) Mr. Acosta retained a jointly-owned apartment in Cartagena, Colombia (the "Cartagena Apartment").

The Debtor owns Repaintex Company ("Repaintex")[2], a general government contractor, specializing in commercial development for the federal government. Prior to the petition date, the majority of Repaintex's work arose under contracts for development and renovations of USAID facilities. During the COVID pandemic, Repaintex was a party to several contracts with USAID. Repaintex experienced a decrease in cash flow due to Covid-19 and significant increased cost of materials. Mr. Acosta caused Repaintex to continue servicing the USAID contracts and advancing costs, with the assurance of federal government that they would take care of the price increases. Unfortunately, the federal government never came through with its assurances and Repaintex ended up exhausting all of its operational cash reserves, including personal funds contributed by Mr. Acosta. The majority of the US AID projects were backed by payment and performance bonds. Although Mr. Acosta offered to complete the work under contract and absorb the losses as long as Repaintex was paid on a timely basis for change orders (which still remain unpaid) and the cost of materials, the government instead elected to put a claim on the bond. Mr. Acosta is a personal guarantor of certain business obligations, including the performance bonds. Given that he did not have the wherewithal to satisfy potential indemnity and business guarantee claims, Mr.

---

[2] Repaintex filed its own Chapter 11 case, which is pending before this Court, Case No. 25-14334-LMI.



Acosta required the automatic stay in order to deal with the business obligations for which he is a guarantor in this Chapter 11 plan.

        a.    <u>Historical Income (4-year lookback)</u>: Prior to the financial challenges described in the preceding paragraph, resulting primarily from a post-Covid fallout (increased costs and inflexible contract terms to account for those increases), Mr. Acosta enjoyed affluence derived primarily from his ownership and operation of Repaintex and maintained a relatively debt-free life.  In his personal tax returns, Mr. Acosta reported adjusted gross income in the amount of $1,623,013 in 2021 and $622,089 in 2022. While Repaintex experienced a significant decrease in income in 2022, Mr. Acosta, believed (based on his communications with and representations from the government contractors) that the situation was a temporary one.  Indeed in 2023, Mr. Acosta's estimated tax deposits reflect that belief.  Unfortunately, his belief did not come to fruition as reflected in the amount of the 2023 Refund.

        b.    <u>The Cartagena Apartment</u>.  In 2021, shortly after the Divorce, Mr. Acosta sold the Cartagena apartment to his parents for the sum of $280,000.

        c.    <u>Future Income Prospects</u>. While Mr. Acosta intends to retain his general contractor license in the hopes that he will someday be able to bid on projects for which he is otherwise qualified, his current financial position would more than likely make him (or a business owned by him) ineligible to obtain bonded work. Thus, in conjunction with restructuring his personal balance sheet under Chapter 11, Mr. Acosta has returned to school and is studying to become a licensed insurance agent.



B.    <u>The Bankruptcy Case</u>.  The Debtor commenced this case (the "<u>Subchapter V Case</u>" or "<u>Case</u>") on March 27, 2025 (the "<u>Petition Date</u>") by filing a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Florida (the "<u>Bankruptcy Court</u>").

C.    <u>Liquidation Analysis</u>.  To confirm the Plan, the Bankruptcy Court must find that creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation.

a.    <u>Scheduled Personal Property</u>:  The nonexempt value of the Debtor's interests in scheduled property of the estate as of the Petition Date is $32,503.00.

b.    <u>2023 Income Tax Refund</u>:  On or around November 2024, the Debtor received approximately $282,225 income tax refund for the year 2023 (the "<u>2023 Refund</u>").  In 2023, the Debtor decreased his wages during a period in which he believed Repaintex's cash crunch situation was temporary. However, he continued to make estimated tax deposits. That led to an overpayment of estimated taxes and the 2023 Refund. The 2023 Refund was deposited pre-petition into a bank account owned jointly between the Debtor and his non-filing spouse and used as follows:

  i.    $35,759 for payment of outstanding 2024 real estate taxes;
  ii.    Approximately $25,000 for lawn, landscaping and miscellaneous home improvement items;
  iii.    Approximately $35,000 in travel expenses for a belated honeymoon and several weeks spent in Colombia with the Debtor's parents;
  iv.    Living expenses through Petition Date when the Debtor was not receiving a paycheck from Repaintex (totaling approximately $30,000);
  v.    Legal fees totaling approximately $5,000;
  vi.    The balance of the 2023 Refund, to wit, approximately $151,466 is included in the Plan Fund.



D.      Given the Chapter 11 administrative claims, the Debtor's lack of income during the pendency of the Subchapter V Case, the additional administrative costs of liquidation if this case converted to a Chapter 7 and a trustee were appointed, the Debtor believes that liquidation value of the Debtor's assets would approximately $58,640.  A liquidation analysis is attached to the Plan as **Exhibit A**, which demonstrates that creditors are receiving more under the Plan than they would in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code**.**

E.      <u>Feasibility</u>. The Plan proponent must also show that he will have enough cash over the life of the Plan to make the required Plan payments. The Debtor has attached projected financial information hereto at **Exhibit B**, which, in conjunction with the Liquidation Analysis demonstrates that the Plan Fund is sufficient to meet all obligations under the Plan.

**You should consult with your accountant or other financial advisors if you have any questions pertaining to these projections**

## ARTICLE I.  SUMMARY

1.1      This Plan proposes to pay 100% of Allowed Priority Claims through the Plan Fund. Allowed Secured Claims will be reaffirmed by the Debtor and paid in accordance with their respective prepetition contract terms.  The Plan provides for two Classes of creditor claims (including priority and general unsecured) and one Class of Equity Interests.

1.2      **Debtor's Assets.**  The Debtor's pre-petition assets are as detailed on Exhibit A attached hereto.

1.3      **Debtor's Liabilities.** The Debtor's pre-petition liabilities are as detailed in Schedules D, E, F, and G of the Debtor's bankruptcy schedules as well as proof of claims that have been Allowed.



## ARTICLE II. <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

| CLASSIFICATION | CLASS DESCRIPTION | IMPAIRMENT[3] | VOTE ENTITLEMENT |
|---|---|---|---|
| Unclassified | Administrative Claims as described in Article 3.2.1 below. | Not Impaired | Presumed to accept and not entitled to vote. |
| Class 1 | Allowed Priority Claims means those Allowed claims entitled to priority status under sections 507 *et seq.* of the Bankruptcy Code. | Not Impaired | Not entitled to vote. |
| Class 2 | General Unsecured Claims | Impaired | Entitled to vote. |
| Class 3 | Equity | Impaired | Presumed to accept and not entitled to vote. |

**All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## ARTICLE III.     <u>TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN</u>

3.1     **General Matter Regarding Classification and Treatment of Claims.**     Except to the extent the holder of an Allowed claim against or Allowed equity interest in the Debtor agree to accept different but lesser treatment, the treatment of Allowed claims and Allowed equity interests shall be as follows:

3.2     **Unclassified Claims**

3.2.1     **<u>Allowed Administrative Claims</u>.**  Administrative Claims include claims for costs and expenses of administering the Subchapter V Case, which are allowed under section 503(b) of the Bankruptcy Code, fees payable to the clerk of the Bankruptcy Court that were incurred during the course of this Subchapter V Case and claims of estate professionals. No motion or application is required to fix fees payable to the clerk's office, as those fees are

---

[3] The term "Impaired" as used in this Plan has the definition ascribed to the term in 11 U.S.C. § 1123



determined by statute.  The Bankruptcy Code requires that Allowed Administrative Claims be paid on the Effective Date, unless a particular claimant agrees to different treatment.

    3.2.2     The following chart lists the Debtor's **estimated** Administrative Claims (other than ordinary course of business expenses, which will be assumed and paid by the Reorganized Debtor in the ordinary course):

| Administrative Claimant | Estimated Amount Owed Net of Retainers |
|---|---|
| Agentis PLLC, Counsel for the Debtor | $30,000.00 |
| Tarek Kiem, Subchapter V Trustee | $10,000.00 |
| Ryan Lanigan, Debtor's Accountant | $7,500.00 |
| **TOTAL:** | **$47,500.00** |

    3.3 **Classified Claims**

    3.3.1     <u>**Class 1.  Allowed Priority Claims**</u>.

    3.3.1.1 The Allowed Priority Claim of the Miami Dade County Tax Collector (the "<u>Tax Collector</u>")  in the estimated amount of $37,249.06 (Claim No.1) will be paid in full on the Effective Date or when first due and payable to the Tax Collector.

    3.3.1.2  The Debtor does not believe there are any other claims filed entitled to priority status.  The Debtor's former spouse, Angela Acosta, has filed a proof of claim (Claim No. 4) asserting priority.  The Debtor intends to object to Ms. Acosta's claim, which, if sustained, will disallow the claim as priority.  In the event that the objection is overruled and a portion or all of Ms. Acosta's claim is allowed as a priority claim, then the Debtor will the pay the value of the Allowed portion of the claim in accordance with the priorities set forth in 11 U.S.C. § 507 *et seq.*

Class 1 is not Impaired, presumed to accept the Plan, and not entitled to vote on the Plan.

    3.3.2    **<u>Class 2. Allowed General Unsecured Claims.</u>**  In lieu of payments over



36 months, as soon as practicable after the Effective Date, the Debtor will make a lump sum distribution of the present day value of the balance of the Plan Fund, if any, after payment in full to Allowed Administrative Claims and a distribution to Allowed Class 1 Claims. The Debtor projects the total payable to Class 2 will be approximately $72,200.  Class 2 is Impaired and entitled to vote on the Plan.

        3.3.3  **Class 3.  Equity Interests in the Debtor.** Class 4 consists of Equity Interests of Mr. Acosta. On the Effective Date, the Equity Interests will be retained in the same amounts and character as they were held prior to the Petition Date.  Class 4 is deemed to accept and not entitled to vote on the Plan.

**ARTICLE IV.**
**ALLOWANCE/DISALLOWANCE OF CLAIMS/VOTING**

4.1  **Disputed Claim:** A "Disputed Claim" is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:

        4.1.2  a timely proof of claim has been filed or deemed filed, against which an objection by the Debtor or other party in interest is pending, or is filed within the deadline provided in this Plan or established by the Bankruptcy Court, and which claim has not been Allowed by order of the Bankruptcy Court; or

        4.1.3  the Debtor has scheduled such claim as disputed, contingent, or unliquidated in its bankruptcy schedules, and no timely proof of claim has been filed.

4.2  **Delay of distribution on a Disputed Claim.**  No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.  At the time the Debtor distributes payment to a Class in which a member holds a Disputed Claim, the Debtor shall deposit into an escrow account the amount to which a Disputed Claimant would be entitled if its Claim were allowed in full. Within thirty (30) days after a Disputed Claim becomes



an Allowed Claim, the *pro rata* distribution which should have been disbursed to that Claimant had such Claim been an Allowed Claim on the date of distribution shall be paid to such Claimant. Once all Disputed Claims have been adjudicated, to the extent that the amounts reserved for payment relating to those Claims exceed the amount of such Claims as ultimately Allowed, such excess shall be returned to the Reorganized Debtor.

4.3     **Settlement of Disputed Claims.** The Reorganized Debtor will have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure or submission of an agreed order.

4.4     **Allowed Claim:** A claim or interest that is Allowed (other than as determined by a final non-appealable order of this Court) includes:

4.4.2     a claim allowed by a final, non-appealable order of the Bankruptcy Court;

4.4.3     a claim for which a proof of claim was timely filed and to which no objection has been made to the allowance thereof within the time fixed by the Bankruptcy Court, and the Claim is not otherwise a Disputed Claim; or

4.4.4     a claim scheduled by the Debtor that has not been designated as contingent, disputed, or unliquidated.

4.5   **Voting:** Only Impaired and Allowed Claims will be entitled to vote to accept or reject the Plan.



## ARTICLE V.

## FUNDING AND IMPLEMENTATION OF THIS PLAN

5.1    **Vesting of Property of the Estate.**    On the Effective Date, all property of the Debtor not otherwise disposed of under the Plan, shall vest with the Reorganized Debtor.

5.2    **Sources of Funding Plan Payments.**    The Plan proposes to pay Allowed Claims under the Plan as soon as practicable after the Effective Date via a Plan Fund in the amount of $161,466 primarily consisting of the balance of the 2023 Refund and available cash on the Effective Date.    The value to the estate of the Plan Fund: (a) is greater than the Reorganized Debtor's projected income resulting from work as an insurance agent, after payment of his ordinary living expenses and Plan obligations as of the Effective Date; and (b) is greater than the liquidation value of the Debtor's assets if the case were hypothetically converted to a case under Chapter 7.

5.2.1    **Projected Net Disposable Income.**    The Debtor's Projected Net Disposable Income means all excess cash from the Debtor's income after payment of: (i) all Allowed Administrative Claims and Allowed Classified Claims and (ii) ordinary course living expenses required for the support of the Debtor. On the Petition Date, the Debtor was unemployed and no longer receiving compensation from Repaintex. However, the Debtor has been studying to become a licensed insurance agent and expects to incrementally earn compensation (starting at approximately $30,000 per year with an estimated annual increase). Based on the Debtor's projected earning potential and household expenses, the Debtor projects his total Net Disposable Income over a period of 36 months following the Effective Date to be approximately $23,256. Notwithstanding the scarcity of the Reorganized Debtor's projected income in the 36 month period following the Effective Date, the balance of the 2023 Refund provides the majority of the funding mechanism under the Plan.    As such, the Plan Fund



provides value to the estate that is materially greater than the Debtor's Project Disposable Income for 36 months from the Effective Date.

5.3    **Debtor's Operation Prior to Confirmation.**    On or prior to the final hearing to consider confirmation of the Plan ("Confirmation Date"), the Debtor shall continue to rehabilitate his career and earning potential as set forth herein and pay his current living expenses in the ordinary course of business.  In addition, the Debtor shall continue to comply with the various other Orders entered by the Bankruptcy Court during the course of his Subchapter V Case.

5.4    **Events Occurring on or after the Effective Date.**    The following events shall occur on or after the Effective Date:  The Debtor shall tender payments due to creditors holding Allowed Administrative Claims and shall make such other payments on the Effective Date as are provided for in this Plan and other orders of the Bankruptcy Court.  As of the Effective Date, all property of the Debtor and his bankruptcy estate shall be retained by the Reorganized Debtor, and the Reorganized Debtor shall continue operating in the ordinary course of business.

5.5    **Documents**.  All necessary documents for the implementation of this Plan shall be executed and delivered by the Debtor, when possible, on or before the Effective Date.  To the extent that the Debtor or any party in interest herein is unable to agree on the form or substance of such documents, such unresolved issues shall be submitted to the Bankruptcy Court.  Upon execution and delivery, all such documents shall be binding on the Debtor and Reorganized Debtor and all other parties subject to such documents.

5.6    **Payments.**    On or as soon as practicable after the Effective Date, the Debtor shall commence payment of all amounts required to be paid on the Effective Date and according to the schedules provided in Article III of this Plan.



5.7    <u>**Causes of Action.**</u>    Except to the extent any rights, claims, causes of action, defenses, and counterclaims are expressly and specifically released in connection with this Plan or in any settlement agreement approved during the Subchapter V Case: any and all causes of action or claims accruing to the Debtor or his estate shall remain assets of the Reorganized Debtor (subject to Article 5.1) whether or not litigation relating thereto is pending on the Effective Date, and whether or not any such claims or causes of action have been listed or referred to in the Plan or any other document filed with the Bankruptcy Court, and the Debtor does not waive, release, relinquish, forfeit, or abandon (nor shall he be estopped or otherwise precluded or impaired from asserting) any claims, causes of action, or defenses that constitute property of the estate, unless expressly provided for in the Plan.

5.8    <u>**Possible Causes of Action after Confirmation**</u>.    The Debtor has reviewed his books and records and is not aware of any potential causes of action, other than the following: potential cause of action against Debtor's former spouse, Angela Acosta, for overpayment and attorneys fees.  However, because all investigations and inquiries have not yet been completed, it is possible that there may be additional causes of action not mentioned herein, and no party should assume that any release or discharge provision contained in the Plan or the Confirmation Order will bar or otherwise inhibit the Reorganized Debtor from taking any action to prosecute or enforce such additional claims or causes of action, which the Debtor and Reorganized Debtor reserve the right to pursue, including any causes of action arising under Chapter 5 of the Bankruptcy Code, of which the Debtor believes there are none.

5.9    <u>**Post-Effective Date Fees and Expenses.**</u>    From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of his business, be authorized to pay the reasonable fees and expenses of professionals thereafter incurred, including, without limitation,



those fees and expenses incurred in connection with the implementation and consummation of the Plan and the adjudication of any Disputed Claims.

5.10    **Determination of Tax Liability**.  The Debtor or Reorganized Debtor, as the case may be, may seek determination of any tax liabilities pursuant to section 505 of the Bankruptcy Code.  Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making, delivery, or recording of an instrument of transfer, shall not be taxed under any law imposing a stamp or similar tax, including but not limited to any documentary stamp taxes or intangible taxes, whether on any deed, leasehold, assignment, promissory note, security agreement, or mortgage.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    **Executory Contracts and Unexpired Leases**.  The Debtor is not a party to any pre-petition leases or executory contracts.

## ARTICLE VII.
## GENERAL PROVISIONS

7.1    **Definitions and Rules of Construction**.  The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the definitions listed in Appendix 1.

7.2    **Effective Date of Plan**.  The Effective Date of this Plan shall take place upon the entry of a final, non-appealable order confirming this Plan (the "Confirmation Order").  If a stay of the Confirmation Order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the Confirmation Order is in effect, provided that the Confirmation Order has not been vacated.



7.3    **Substantial Consummation**.  The Plan will be deemed substantially consummated upon satisfaction of the requirements of 11 U.S.C. § 1101(2) and after payment in full of Allowed Administrative Claims.

7.4    **Severability**.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.5    **Binding Effect**.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

7.6    **Captions**.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.7    **Controlling Effect**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.  In the event of any inconsistency between the Plan, any exhibit to the Plan, or any other instrument or document created or executed pursuant to the Plan, the Plan shall govern.

## ARTICLE VIII.
## DISCHARGE AND RELEASES

8.1 **Discharge of Debt**.

8.1.1    If this Plan is accepted by all Classes entitled to vote on the Plan, the Debtor will be discharged from any debt that arose before the Petition Date (except for



obligations under the Plan) upon entry of the Confirmation Order.  In the event that the Plan is not consensual, the Debtor shall receive its discharge upon completion of all payments under the Plan.

8.2      **Consensual Plan**. If the plan of the debtor is confirmed under section 1191(a) of the Bankruptcy Code, the service of the Subchapter V Trustee in the case shall terminate when the plan has been substantially consummated.  As such, the debtor shall make all payments under the plan, including any deposits required by the plan to be distributed on confirmation.

8.3      **Non-Consensual Or Cramdown Plan**. If the plan is confirmed under section 1191(b) of the Bankruptcy Code, per section 1186, property of the estate does not revest in the reorganized debtor until completion of all plan payments.  Furthermore, entry of discharge is delayed until completion of all Plan payments per section 1192.  Also, except as otherwise provided in the plan or in the order confirming the Plan, the Subchapter V Trustee shall make payments to creditors under the plan.   As such, the following provisions shall apply to all claims and disbursements made by the Subchapter V Trustee under the plan:

8.4      The Debtor shall file with the Court as a supplement to the plan and provide notice to all creditors at or before confirmation, a list of all the creditors who will be receiving payments under the plan, the total amount to be paid to each creditor under the plan (inclusive of all allowed interest and fees) and the payment terms and schedule for each creditor under the plan.

8.5      The Debtor shall timely pay to the Trustee all funds needed to make payments to creditors under the plan.  If the debtor fails to timely make any plan payment to the Trustee, the Trustee may file and serve a notice of delinquency upon the debtor and the debtor's attorney.  The debtor shall have 45 days from the date of the notice of delinquency to make all payments due under the plan, including any payments that become due within the 45−day period. If the debtor



is seeking to cure the delinquency in a modified plan the debtor must file a motion to modify the confirmed plan within 45 days of the date of the notice of delinquency.  If the debtor is not current with plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify within that time period, the Trustee will file and serve a report of non−compliance and may thereafter seek the dismissal or conversion of the case to Chapter 7.

8.6    Within two (2) weeks of receiving the funds from the debtor to make the plan payments, the Trustee will disburse the amounts collected from the debtor, to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

8.7    All payments under the plan will be made by the Trustee to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim, unless the Trustee has been notified in writing of a change of address.

8.8    Any payment required to be made under the plan on a day other than a business day shall be made on the next succeeding business day.

8.9    Any distributions of cash or other property under the plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Debtor.

8.10    Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the confirmation date without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the confirmation date shall be deemed disallowed in full and expunged without any action by the Trustee unless the claimholder has obtained prior Court authorization for the filing of such amendment.  The Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.



8.11    Unless expressly provided in the plan or the confirmation order, post-petition interest and fees shall not accrue on or after the Petition Date on account of any claim.

8.12    During the pendency of this case, if requested by the Trustee, the debtor shall provide copies of yearly income tax returns to the Trustee (but not file with the Court) no later than 30 days after the due date to the underlying taxing authority.

8.13    Debtor shall file with the Bankruptcy Court a financial report or statement of disbursements for each quarter (or portion thereof) that this Chapter 11 case remains open after the effective date of the plan. These reports shall include any distributions made pursuant to the plan along with disbursements made from the sale or refinance of any property outside the ordinary course of business.  Debtor shall attach to the quarterly report copies of all refinancing and/or sale closing documents for any property sold during the applicable period.

8.14    **Trustee's Post-Confirmation Compensation**. Under section 330 of the Bankruptcy Code, the case-by-case Subchapter V Trustee shall be compensated for services and reimbursed for expenses from the Plan Fund.  The Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the Plan, as appropriate, even if the Trustee is not the disbursing agent of the Plan

8.15    Confirmation of this Plan does not discharge any debt excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

8.2    **Releases and Limited Exculpations Related to the Subchapter V Case and the Plan. As of the Effective Date, except for the Debtor's express obligations under the Plan and causes of action that do not arise until the Petition Date, and Claims reserved by the Debtor to be pursued under the Plan (if any), the Debtor, the Subchapter V Trustee and their**



**professionals shall be subject to the *Barton Doctrine* and are hereby released and discharged from any and all claims, causes of action, demands, liabilities, losses, damages, whether known or unknown, under federal, state or other law, that arose after the Petition Date and prior to the Effective Date in connection with any matter arising from or relating to the Subchapter V Case, except for any acts or omissions resulting from fraud, gross negligence, or willful misconduct or contractual obligations of non-Debtor parties (including but not limited to personal guaranties by Debtor's principals and shareholders which shall remain in full force and effect).**

## ARTICLE IX.

## <u>RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT.</u>

9.1    The Bankruptcy Court shall retain jurisdiction over this proceeding after the Confirmation Date of the Plan until the entry of a final decree pursuant to Rule 3022 of the Federal Rules of Bankruptcy Procedure for the following purposes:

9.1.1    To enable the Debtor and the Reorganized Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

9.1.2    To enable the Debtor and the Reorganized Debtor to continue and consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

9.1.3    To determine all controversies relating to or concerning the classification, subordination, allowance, valuation, or satisfaction of Claims, including without limitation the IRS Claim Objection;

9.1.4    To liquidate or estimate for purposes of allowance all contested, contingent, or unliquidated Claims;



9.1.5     To determine the validity, extent, and priority of all liens, if any, against property of the estate;

9.1.6     To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

9.1.7     To determine all applications for compensation and reimbursement and objections to Administrative Claims;

9.1.8     To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

9.1.9     Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor or the Reorganized Debtor;

9.1.10    To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

9.1.11    To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

9.1.12    To determine any tax liability of the estate in connection with the Plan, actions taken, distributions, or transfers made thereunder;

9.1.13    To enforce the terms of the Plan including any and all releases and injunctions created pursuant to the terms of the Plan;

9.1.14    To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

9.1.15    To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan; and



9.1.16    To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

**ARTICLE X.**

**<u>MODIFICATIONS TO THE PLAN</u>**

The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date without leave of the Bankruptcy Court.  After the Confirmation Date, parties in interest may, with Bankruptcy Court approval and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Plan.

**ARTICLE XI**

**<u>AMENDMENT OF CLAIMS</u>**

Claimants shall not be permitted to amend or otherwise modify any Claim after the Confirmation Date without leave of the Bankruptcy Court.

**[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]**

Respectfully submitted by:

 

_____
**Carlos Augusto Acosta**
**Debtor in Possession**

/s/ Jacqueline Calderin
Jacqueline Calderin
jc@agentislaw.com
Florida Bar Number 134414
Agentis PLLC
*Attorneys for the Debtor in Possession*
45 Almeria Avenue
Coral Gables, FL 33134
T. 305.722.2002



**Appendix 1**

The following is a list of terms defined in this Plan, and the location of respective definitions:

| Defined Term | Location |
|---|---|
| 2023 Refund | Background, Par. C |
| Administrative Claims | Article 3.2.1 |
| Allowed | Article 4.2 |
| Bankruptcy Code | Preamble |
| Cartagena Apartment | Background, Par. A |
| Confirmation Date | Article 5.3 |
| Confirmation Order | Article 7.2 |
| Debtor | Preamble |
| Disputed Claim | Article 4.1 |
| Divorce | Background, Par. A |
| Effective Date | Article 7.2 |
| Equity Interests | Article II; 3.3.4 |
| General Unsecured Claims | Article II |
| Impaired | Article 2 |
| Liquidation Value | Preamble |
| Petition Date | Preamble |
| Plan | Preamble |
| Priority Claims | Article II |
| Projected Net Disposable Income | Article 5.2.1 |
| Plan Fund | Preamble, Article 5.2 |
| Reorganized Debtor | Article 5.1 |



P a g e | 23

**Exhibit "A"**

| Assets | Value of Debtor's Interest | Liens or Exemption values | Net to estate |
|---|---|---|---|
| Homestead | $1,400,000 | $1,400,000 | 0 |
| Ducati Diavel | $2,000.00 | 0 | $2,000 |
| Range Rover | $15,000 | $5,000 $1,000 | $9,000 |
| SeaDoo Jet Ski | $5,000 | $0.00 | $5,000 |
| Household goods | $9,070 | $9,070 | 0 |
| Electronics | $800 | $800 | 0 |
| Bicycle | $100 | 0 | $100 |
| Pistols | $100 | 0 | $100 |
| Clothing | $0 | 0 | 0 |
| Jewelry | $100 | 0 | $100 |
| Cash | $5 | 0 | $5 |
| Bank accounts (other than jointly-owned account) | $7,135 | $7,135 | $0 |
| 2024 Tax refund | $16,198 | 0 | $16,198 |
| Insurance policies | $315,212 | $315,212 | 0 |
| 2023 Refund (unused balance as of Petition Date) | $151,466 | $0 | $151,466 |
| Potential Chapter 5 causes of action[4] | 0 | 0 | 0 |
| TOTAL | $1,922,186 | $1,738,217 | $183,969 |
| **Claims** | | | |
| Less Administrative (ordinary course of business living expenses for 180 days @ $7,297 per month) | | | -$43,782 |
| Less legal fees | | | -40,000 |
| Less Subchapter V trustee fees | | | -10,000 |
| Less Debtor's Accountant | | | -7,500 |
| Less Chapter 7 § 326 statutory fees | | | -12,850 |
| Less other Chapter 7 fees and costs | | | -18,397 |
| **Liquidation Value** | | | **$51,440** |

---

[4] The Debtor does not ascribe any value to the sale of the Cartagena Apartment or to the transfers made to his former spouse as part of the Divorce as the Debtor was balance sheet solvent at all relevant times; paying his debts as they became due, and routinely audited by the federal government sureties in the ordinary course to determine his solvency and qualifications for the bonds securing Repaintex's government projects. With no indicia of insolvency or intent to hinder, delay or defraud any creditors, Mr. Acosta does not believe there any viable causes of action under Chapter 5. As to the 2023 Refund, there is similarly no indicia of actual or constructive fraudulent transfer for the funds that were used prior to the Petition Date.

**Exhibit "B"**

Estimated Effective Date Distributions

| | |
|---|---|
| Allowed Administrative Claims | $47,500 |
| Allowed Class 1 Claims | $37,248 |
| Allowed Class 2 Claims (assuming no Allowed Priority Claims other than tax) | $72,200[5] |
| | |

---

[5] Assumes the present day value of $76,000

**Exhibit "C"**

**Projected Disposable Income Analysis**

**Projected Net Disposable Income - 36 months**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Year 2 | Year 3 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning | $ 10,000 | $ 107,948 | $ 101,930 | $ 98,412 | $ 94,894 | $ 91,376 | $ 87,858 | $ 84,757 | $ 81,655 | $ 78,554 | $ 75,453 | $ 72,351 | $ 69,250 | 40,784 | |
| Wages/Commissions (note 1) | | | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,500 | $ 2,917 | $ 2,917 | $ 2,917 | $ 2,917 | $ 2,917 | $ 2,917 | $ 43,750 | 54,688 | $ 125,937.50 |
| Balance of 2023 tax refund | $ 151,466 | | | | | | | | | | | | | | $ 153,000.00 |
| **Available Balance (beginning of month)** | $ 161,466 | $ 107,948 | $ 104,430 | $ 100,912 | $ 97,394 | $ 93,876 | $ 90,775 | $ 87,673 | $ 84,572 | $ 81,471 | $ 78,369 | $ 75,268 | $ 113,000 | $ 95,472 | |

**Debtor's expenses**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Year 2 | Year 3 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Electricity | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | 4,200 | 4,200 | |
| Water and sewer bill | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | $ 110 | 1,320 | 1,320 | |
| Pool service and chemicals | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | 3,000 | 3,000 | |
| Maintenance | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | 2,400 | 2,400 | |
| Housekeeping | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | $ 800 | 9,600 | 9,600 | |
| Lawncare | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | $ 250 | 3,000 | 3,000 | |
| Internet | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | $ 75 | 900 | 900 | |
| Clothing | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | $ 300 | 3,600 | 3,600 | |
| Personal Care Products and Services | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | $ 50 | 600 | 600 | |
| Medical/Dental Expenses and Health Insurance | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | $ 1,500 | 18,000 | 18,000 | |
| Transportation - gas, tolls, parking, repairs, maintenance | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | $ 350 | 4,200 | 4,200 | |
| 1/2 of Real estate taxes paid in November (annualized) | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | $ 1,600 | 19,200 | 19,200 | |
| Personal Care Products and Services (haircuts, vitamins, supplements) | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | $ 125 | 1,500 | 1,500 | |
| Car Insurance | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | $ 58 | 696 | 696 | |
| Plan Payments | | | | | | | | | | | | | | | |
| Allowed Administrative Claims | $ 47,500 | | | | | | | | | | | | | | |
| Allowed Class 1 Claims (Included in monthly expenses) | | | | | | | | | | | | | | | |
| Total Uses | $ 53,518 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | $ 6,018 | 72,216 | 72,216 | 264,148 |
| **Check: Cash Available at End of Month** | $ 107,948 | $ 101,930 | $ 98,412 | $ 94,894 | $ 91,376 | $ 87,858 | $ 84,757 | $ 81,655 | $ 78,554 | $ 75,453 | $ 72,351 | $ 69,250 | 40,784 | 23,256 | |

Note 1:  Projected salary assumes Mr. Acosta's ramp up with his insurance sales business of 25% per year

Totals

Debtor's Projected Net Disposable Income

| | |
|---|---|
| $ 150,000.00 | Projected wages |
| $ 10,000.00 | Projected beginning cash |
| $ 151,466.00 | 2024 tax refund |
| $ (310,192.00) | Projected Uses |
| $ 1,274.00 | Projected Net Disposable Income |