# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

*In re:*                                          Case No.: 25-13288-LMI

CARLOS AUGUSTO ACOSTA,                            Subchapter V
                                                  Chapter 11

_____Debtor._____ /

## DEBTOR'S OBJECTION TO CLAIM #4-1 OF ANGELA ACOSTA

> ### IMPORTANT NOTICE TO CREDITORS:
> ### THIS IS AN OBJECTION TO YOUR CLAIM
>
> **This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf. Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.  If you disagree with the objection or the recommended treatment, you must file a written response WITHIN 30 DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve (mail) a copy to the Debtor OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.  Any written response must contain the case name, case number, and must be filed with the Clerk of the United States Courthouse, C. Clyde Atkins, U.S. Courthouse, 301 N. Miami Avenue, Room 150, Miami Florida 33128.**

　　　　Pursuant to FRBP 3007 and Local Rule 3007-1, the Debtor objects to Claim No. 4-1 (the "Claim") filed by Angela Acosta ("Claimant"), **and states:**

### Preliminary Statement

　　　　Without waiving the right to modify or supplement this Objection, Debtor objects only to the status of the Claim asserted by Claimant and not to the allowance of the Claim. As such, the Debtor recommends that the Claim be allowed as a general unsecured claim.

　　　　The Marital Settlement Agreement between Debtor and Claimant (the "Parties"), dated June 23, 2020 (the "MSA", a true and correct copy of which is attached hereto as **Exhibit "1"**). The MSA was negotiated at arms' length and imposed certain contractual obligations on the Debtor as consideration for the MSA.  The MSA was thereafter approved by the Court presiding over the dissolution of the Parties' marriage , culminating in a final judgment of dissolution dated July 7, 2020.

　　　　In the MSA, Claimant expressly (and in several pertinent provisions of the MSA) waived any entitlement to then-existing or future support (*See* MSA at ¶13).   The portion of the Claim wherein Claimant seeks priority status arises under the Equalizing Payments[1] provision of the Equitable Distribution of the Parties' assets (*See, e.g.,* MSA at ¶11.1). Additionally, the MSA does not confer any

---

[1] Capitalized terms have the meaning ascribed to them in the MSA unless otherwise defined herein.



obligation on the Debtor for Claimant's attorneys' fees and costs as support, nor has any court of competent jurisdiction awarded said fees and costs as support in favor of Claimant (*See* MSA at ¶¶16.1-16.2).

As such, the portion of the Claim for approximately $201,530.00 does not qualify as a domestic support obligation under 11 U.S.C. § 101(14A) and is not entitled to priority treatment under 11 U.S.C. § 507(a)(1). Accordingly, this Objection should be sustained and the Claim should be allowed as a general unsecured claim.

**I HEREBY CERTIFY** that on  July 2, 2025, a true copy of the foregoing was served electronically upon all parties entitled to notice via a CM/ECF and via U.S. Mail to all the parties listed below.

Respectfully submitted

> **AGENTIS**
> Counsel for the Debtor
> 45 Almeria Avenue
> Coral Gables, FL 33134
> T. 305.722.2002
>
> */s/ Jacqueline Calderin*
> Jacqueline Calderin
> Florida Bar No. 134414
> jc@agentislaw.com
> Paula A. Martinez
> Florida Bar No. 1017901
> pam@agentislaw.com

**Service via U.S. Mail:**

Angela Acosta
8332 SW 44th Place
Davie, FL 33328

Santiago J. Muinos, Esq.
*Counsel for Creditor Angela Acosta*
66 West Flagler, Suite 900
Miami, FL 33130



# EXHIBIT "1"

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

IN RE: THE MATTER OF:

ANGELA ACOSTA,

    Wife,

and

CARLOS AUGUSTO ACOSTA,

    Husband

_____/

FAMILY DIVISION
CASE NO. 2020-001165-FC-12

## MARITAL SETTLEMENT AGREEMENT

**THIS DOCUMENT** is a Marital Settlement Agreement (hereinafter "Agreement"), made and entered into this _____ day of June, 2020, between **ANGELA ACOSTA** (hereinafter referred to as the "Wife"), a resident of the State of Florida and **CARLOS AUGUSTO ACOSTA** (hereinafter referred to as the "Husband"), a resident of the State of Florida.

## RECITALS

**WHEREAS**, the parties were married on June 26, 1993, in Bogota, Colombia; and,

**WHEREAS,** the parties' children have both attained the age of majority and no further issue is contemplated; and,

**WHEREAS**, the marriage of the parties is irretrievably broken; and,

WHEREAS, the parties separated on or about June, 2018; and,

**WHEREAS**, the parties desire to amicably settle and adjust forever all rights of support and maintenance, property and other rights, claims or demands arising of their marital relationship, including, but not limited to, equitable distribution, estate rights,

distribution of non-marital properties, alimony (maintenance), tort claims, attorneys' fees, suit monies, costs, claims associated with their business interests and any and all other past and future claims that either party now has or may hereafter have against the other as a result of their marriage or for any other reason;

**NOW THEREFORE**, in consideration of the mutual promises and undertakings contained in this Agreement, and other good and valuable consideration, the parties agree as follows:

### 1. RECITALS

The above recitals ('WHEREAS" clauses) are hereby incorporated as a part of this Agreement and accepted and agreed to by both parties as though fully set forth in the body of this Agreement. The fact that a particular provision of the body of this Agreement is not mentioned in the recitals shall not affect the validity or enforceability of such provision. The facts stated in the recitals shall be conclusively presumed to be true for all purposes between the parties.

### 2. SEPARATION/NO INTERFERENCE

The parties have been living separate and apart and shall continue to live separate and apart from each other. Each party shall be free from interference, control or authority of the other party. Neither party shall harass, annoy or interfere with the other party's personal or private life or business affairs or financial interests. Each party may engage in any business or employment for his or her separate benefit. Neither party shall enter the home or business of the other without express prior written permission of the other.

### 3. REPRESENTATION





Page 2 of 23

3.1.   **Independent Counsel:** Each party has had independent counsel and legal advice of his and her own selection in the negotiations and in the preparation of this Agreement. Each party fully understands all the facts and has been fully advised and informed as to his and her legal rights and obligations under the terms hereof.

3.2.   **Acknowledgment by Wife of Pro Se Representation:** The Wife acknowledges that she was represented by counsel Monica I. Salis, Esq. of Monica I. Salis, P.A., 915 Middle River Drive, Suite 402, Fort Lauderdale, FL 33304, and had benefit of a forensic accountant Ari S. Harper, CPA, ABV, CFF of JD Gilbert & Company, 800 Fairway Drive, Suite 420, Deerfield Beach, FL 33441. Wife's counsel withdrew from her representation at the request of the Wife, and Wife decided to proceed and represent herself, and that she is aware that she has a right to counsel of her own choosing. The Wife has reviewed each provision of this Agreement and has had the opportunity to hire counsel and to ask questions with regard to this Agreement. The Wife further represents that she has received no legal advice or counsel from Husband's attorney and has not spoken to counsel for Husband except for in writing. Wife has full knowledge of all the financial matters of the parties and the Husband's business ownership interest. Wife has received all the financial disclosures and is fully satisfied with the disclosures and this Agreement.

3.3.   **Acknowledgment of Legal and Accounting Advice by Husband:** The Husband acknowledges that he has been represented by counsel of his own selection. The Husband has been represented by Delaila J. Estefano, Esq. of Estefano Law, P.A., 1600 Ponce de Leon Blvd, Suite 804, Coral Gables, Florida 33134; and the Husband has utilized the forensic accounting services of Paul Garcia, CPA of Paul A.



Garcia, P.A., 135 San Lorenzo Ave, Suite 660, Coral Gables, Florida 33146, to address financial matters associated with this case. The Husband's attorney has reviewed this Agreement with the Husband and has respectively counselled the Husband as to his rights and obligations associated with the Agreement. The Husband acknowledges that he is fully satisfied with the professional services which have been rendered on his behalf and that he had ample opportunity before executing this Agreement to have any questions answered.

3.4.   **Financial Disclosure:** Each of the parties to this Agreement has provided the other with their respective financial documentation before the execution of this Agreement. Both parties acknowledge that they have been given full and complete access to all requested financial records, business records and financial information relating to the assets and liabilities, income and expenses of the other. Each party acknowledges that he and she are satisfied that the financial documentation he and she have received constitutes sufficient financial disclosure to enable the parties to enter into this Agreement. As such, the parties have decided not to conduct any further financial discovery in this case. Each party hereby waives any additional financial disclosure from the other. Further, the parties stipulate and agree that they have not relied upon the Financial Affidavits filed by each of them in this case and those Financial Affidavits shall not be utilized in the future to establish or support any claim that either party may hereafter file against the other based on a claim of a false or fraudulent financial affidavit.

3.5.   **Tax Advice:** The parties acknowledge that they have not received advice from counsel concerning the tax consequences of this Agreement, but they have to the extent they deemed necessary, received advice regarding the tax consequences

AA

CAA

of this Agreement from separate counsel and/or accountants. Both parties acknowledge that they had the opportunity to retain their own certified public accountant, accountant, tax attorney or tax advisor with reference to the tax and financial implications of this Agreement. Both parties acknowledge that they have not relied upon any tax or financial advice that may or may not have been given by any of their attorneys or accountants in negotiating this Agreement and associated with the terms and provisions of this Agreement. Both parties acknowledge that they have been advised to seek their own independent tax and financial advice by retaining a certified public accountant, accountant, tax attorney, or tax advisor with reference to tax and financial implications involved in this Agreement. The signature of the Husband and Wife to this Agreement acknowledges that they have read this particular paragraph and have had the opportunity to seek independent tax and financial advice.

## 4.    VOLUNTARY EXECUTION

The parties to this Agreement declare that they have read, in detail, and have understood the provisions set forth in this Agreement and the parties have done so after retaining independent legal counsel to advise them with regard to the provisions of this Agreement. The parties further represent that, after having read and understood all of the terms, conditions, waivers and obligations, set forth in this Agreement, they believe this Agreement to be fair, just, and reasonable. Each has signed, executed and entered into this Agreement freely and voluntarily without any undue influence, fraud, coercion, threats and/or intimidation by either party or their counsel. Each party fully intends to be bound by all of the terms, conditions, waivers and obligations set forth in this Agreement, and that they are able to do it, according to the laws of the State of Florida. THE



CAA

Page 5 of 23

HUSBAND ANS WIFE DECLARE AND ACKNOWLEDGE THAT THEY FULLY UNDERSTAND THE TERMS AND PROVISIONS OF THIS AGREEMENT. THE HUSBAND AND WIFE DECLARE AND ACKNOWLEDGE THAT THEY FULLY SPEAK, WRITE, AND UNDERSTAND ENGLISH AND THAT THEY FULLY UNDERSTAND THE TERMS AND PROVISIONS OF THIS AGREEMENT.

### 5.    ADDITIONAL INSTRUMENTS

The parties shall hereafter, upon the request of the other, execute and deliver such bills of sale, deeds, releases, waivers, and other instruments, papers, or documents as either party may reasonably require for the purpose of giving full effect and compliance with all of the provisions of this Agreement, and affecting any real or personal property set forth herein.  In the event that either party shall fail or refuse to execute any such instrument, paper, or document, then it is the understanding of the parties that an order of any court of competent jurisdiction shall, and will operate as, and instead of the instrument, paper or document for the conveyance of said real or personal property set forth herein.  The party requesting a document to be executed shall be charged with the responsibility for preparing and delivery of the document for execution.

### 6.    MODIFICATION AND WAIVER

No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and unless said subsequent instrument is executed with the same formality as this Agreement. The failure of either party to insist upon the strict performance of any of the provisions of this Agreement shall not be deemed a waiver of the right of the party thereafter to insist upon the performance of that, or any other provision of this Agreement, at any time whatsoever.



Page 6 of 23

### 7.   ENTIRE UNDERSTANDING

The parties have incorporated in this Agreement their entire understanding of all matters relating to all issues contained herein. The parties also acknowledge that as an integral part of this Agreement they are also executing documents pertaining to the Husband's Business Interests. Except as provided herein no oral statement or prior written matter extrinsic to this Agreement concerning the rights, duties, or obligations of either party hereto, or to the other, shall have any force or effect on any party. The parties are not relying on, and have not relied upon, and specifically herein repudiate any past or present representations other than those expressly set forth herein. Any prior agreements, statements, promises or representations between the parties, whether written or oral, are hereby revoked and held void and unenforceable.

### 8.   GOVERNING LAW AND PARTIAL INVALIDITY

This Agreement shall be strictly construed and governed in accordance with the laws of the State of Florida. If any provision of this Agreement is held to be invalid, void, voidable or, for some other reason unenforceable, then, in that event, all of the other remaining provisions of this Agreement shall nevertheless continue to be binding and in full force and effect on the parties hereto.

### 9.   COUNTERPART SIGNATURE

This Agreement may be signed in one or more counterparts, each of which, when executed with the same formality and in the same manner as the original, shall constitute an original. Signatures to this Agreement transmitted by e-mail or facsimile shall be valid to bind the parties signing hereto and each party accepts the telecopied or scanned signature of the other party to this Agreement.



AA

CAA

### 10.   MUTUAL RELEASES

10.1.  **General Release**: Except as otherwise expressly provided in this Agreement, each party releases, discharges, and exonerates the other from any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, intentional torts, negligence claims, agreements, promises, variances, trespasses, damages, judgments, executions, claims of each and every kind and character arising out of their marital relationship or otherwise, whether legal, equitable or beneficial, including, but not limited to, any marital claims, contract claims, or tort claims of any nature or kind whatsoever and demands whatsoever, in law or in equity, which said either party ever had, now has, or which any personal representative, successor, heir or assign of said either party, hereafter can, shall or may have, against the other, for, upon or by reason of any matter, cause or thing whatsoever, whether known or unknown, from the beginning of the world to the day of these presents.

10.2.  **Release of Claims to Estate**: The parties agree to release and do hereby release any and all right, title, interest or claims they may have to or upon the property or estate of the other whether real or personal and whether now owned or hereafter acquired. Each party shall have the free and unrestricted right to dispose of his or her individual property from any claim or demand by the other party and his or her estate shall belong to the person or persons who become entitled by will or devise, bequest, intestacy, administration, beneficiary to insurance or annuity, or otherwise.  If one of the parties dies during the lifetime of the other party and without limiting the foregoing, each party expressly waives, surrenders and relinquishes any and all right of



CAA

election to take any share of the estate of the other party under will and in intestacy, including but not limited to, any and all dower, curtesy, elective share, homestead, or other present or future rights and interests in any real or personal property of which either party may die seized or possessed, and each party further surrenders and renounces any right of administration to the estate of the other party and shall execute any and all documents, including but not limited to, a disclaimer, to effectuate this provision.

10.3. **Release of Insurance Policy Claims:** Except as may be specifically set forth in this Agreement, each party hereby relinquishes any rights he or she may have to any insurance policies owned by the other in which he or she was designated as beneficiary prior to this Agreement. In the event a party dies after the execution of this Agreement leaving an insurance policy which establishes the other party as a beneficiary of that insurance and the beneficiary designation was made prior to this Agreement, the beneficiary of the insurance shall be deemed to be the estate of the deceased party.

10.4. **Wife's Release of Claims Involving Husband's Business Interests:** The Wife hereby releases and relinquishes any rights, interest, dividends, or claims she may have in any and all corporations, business entities, stock ownership, and all other assets and business interests that might now or hereafter be owned by the Husband. This release specifically includes all present and future rights, title, interests, and claims that the Wife may have against the Husband's business interests in any and all entities in which the Husband may have or has a direct or tangential interest or involvement, including, but not limited to, REPAINTEX COMPANY, a Virginia Corporation (hereinafter – "Business Interests"). Nothing in this agreement provides the Wife any rights or claims to an accounting, or audit of the company's books or records.

Page 9 of 23

## 11.   PROPERTY DIVISION AND RECOGNITION OF THE PARTIES' EQUITABLE DISTRIBUTION RIGHTS TO MARITAL ASSETS

As full and final resolution of any and all claims or demands of the parties arising out of the marital relationship and to achieve an equitable distribution of all marital assets, the parties agree to the division of assets as set forth below:

11.1. **Lump Sum Payment/Equalizing Payment:** In order to achieve an equitable division of marital assets and liabilities between the parties, the Husband agrees that as long as the Husband owns a 50% or greater ownership interest and share of REPAINTEX COMPANY, the Husband shall make a yearly equalizing payment to the Wife, in the sum of 15% of the net yearly profits (as further defined below) of REPAINTEX COMPANY. As provided by Section 1041 of the Internal Revenue Code, the parties agree that such payment does not constitute alimony, and that there should be no recognized gain or loss for such payment because the same is made incident to the dissolution of marriage. Said equalizing payment shall be paid by the Husband, through REPAINTEX COMPANY, in monthly installments in the amount of $9,000.00 per month, payable to the Wife, on or before the 5th day of each month, plus the remaining balance, if any, of the 15% sum from the net yearly profit shall be paid to the Wife on or before April 30th of the following year. *As an example and for purposes of illustration only, if the sum of the net yearly profits of Repaintex are $300,000.00 for calendar year 2020, then the Wife shall receive $9000 a month for 12 months, and the balance of $192,000.00 shall be paid by April 30, 2021.* If there are no additional sums due to the Wife, and the Husband has overpaid on the sum of the 15% of the net yearly profit by making his monthly payments of $9,000.00 in any given year, the Husband shall have a credit, which shall be rolled over



CAA

Page 10 of 23

and allocated to the next calendar year towards the Wife end of the calendar year balance. Net yearly profits are defined as the net yearly profits as stated in the company's profit and loss statement issued by the corporate accountant for Repaintex and used for the purposes of filing the company's yearly corporate yax return.

    **11.2.  The Marital Home:** There exists certain real property in which one or both parties may claim an interest, herein referred to as the "Marital Home," located at 17111 Biscayne Blvd, Unit 2205, Aventura, FL 33160. The Marital Home shall be the property of Wife, who has had the exclusive use and possession of the Marital Home, and Husband hereby waives and releases any and all claim or interest in said property. Husband shall execute and deliver a special warranty or quitclaim deed to convey any and all such interest in said property to Wife.  Husband hereby assigns to Wife any and all of his interest in any escrow accounts, homeowner's insurance policies, and/or utility deposits in connection with the Marital Home. Wife shall continue to pay all taxes and insurance on the Marital Home as of July 1, 2020.  Wife shall be entitled to take any itemized deductions available under the Internal Revenue Code in connection with the Marital Home, including items such as mortgage interest and real estate taxes for the tax year in which this Agreement is executed, and every year thereafter.

    **11.3.  The Property in Virginia:** There exists certain real property in which both parties claim an interest, herein referred to as the "Property in Virginia," located at 44596 Stepney Drive, Ashburn, VA 20147. The Property in Virginia shall be listed for sale and sold at fair market value upon the execution of this Agreement or as soon as practicable thereafter, subject to the provisions of sale set forth below. The property is currently rented until August, 2020, and Wife shall receive the rental income in full as her


AA

CAA

sole and separate property. When tenants move out, the Wife shall be responsible to return the security deposit to the tenants. Wife is a licensed realtor, and she shall list the property for sale and claim her commission from the sale of the property, which shall not exceed 3% of the sale price. The property shall be sold for a price and/or under terms that are mutually agreeable to Husband and Wife. Until the property is sold, Wife shall assume any and all liabilities associated with the property, including, but not limited, to property taxes, property insurance, utility expenses, and all necessary maintenance and repair expenses. All maintenance and repairs necessary to keep the property in its present condition shall be the sole responsibility of Wife. The "net sales proceeds" are defined as the gross sales price, LESS any real estate commissions, customary and ordinary closing costs, and full payment of the existing mortgage indebtedness on the Husband's Residence, located at 12911 Oleander Rd, North Miami Beach, FL 33181, as specified below. Husband shall request a mortgage payoff from BB&T for the mortgage on the Husband's Residence and provide it to the closing agent at least five (5) days prior to the closing of the Property in Virginia for disbursement as specified below. The net sales proceeds from the Property in Virginia shall be used to pay the following debt: to pay off mortgage balance with BB&T on the Husband's Residence in full. Wife shall receive any remaining net sales proceeds as her sole and separate property.

11.4. **The Property in Colombia**: There exists certain real property in which one or both parties may claim an interest, herein referred to as the "Property in Colombia," located in Cartagena, Colombia, and titled in the Husband's individual name. The Property in Colombia shall be the property of Husband, and Wife hereby waives and releases any and all claim or interest in said property. Wife shall execute and deliver any



and all necessary documents as may be required by the law of Colombia to convey any and all such interest in said property to Husband. Wife hereby assigns to Husband any and all of her interest in any escrow accounts, insurance policies, and/or utility deposits in connection with the Property in Colombia. Husband shall pay all taxes and insurance on the Property in Colombia as of July 1, 2020.

      11.5. **The Husband's Residence**: There exists certain real property in which one or both parties may claim an interest, herein referred to as the "Husband's Residence," located at 12911 Oleander Rd, North Miami Beach, FL 33181, which was purchased by the Husband after the date of separation of the parties. The Husband's Residence shall be the property of Husband, and Wife hereby waives and releases any and all claim or interest in said property. Wife shall execute and deliver a special warranty or quitclaim deed to convey any and all such interest in said property to Husband. Wife hereby assigns to Husband any and all of her interest in any escrow accounts, insurance policies, and/or utility deposits in connection with the Husband's Residence. Husband shall pay all taxes and insurance on the Husband's Residence as of July 1, 2020. Husband shall be entitled to take any itemized deductions available under the Internal Revenue Code in connection with the Husband's Residence, for the tax year in which this Agreement is executed and every year thereafter. There is a mortgage with BB&T secured by the Husband's Residence. As of July 1, 2020, Husband shall assume said mortgage until the mortgage balance is fully paid off from the net sales proceeds from the sale of the Property in Virginia, as specified above, and shall indemnify and hold Wife and her property harmless from any failure to pay the same.



Page 13 of 23

**11.6.   Retirement**: Each party shall receive any and all benefits existing by reason of his or her past, present, or future employment or military service, including but not limited to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, military retired pay, accrued unpaid bonuses, or disability plan, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom and any other rights related thereto.   The other party hereby waives and releases any and all claims or interest therein.

**11.7.   Husband's Vehicles**: The Husband shall keep his motorcycle, and the Jeep Cherokee located in Cartagena, Colombia, as his sole and separate property.

**11.8.   Wife's Vehicle and Horse**: The Wife shall keep her Audi as her sole and separate property. The Audi is paid off in full, and is currently titled in REPAINTEX COMPANY's name. REPAINTEX COMPANY shall transfer the title to the Audi to the Wife's name within 10 days of this Agreement. Wife shall hold Husband and Repaintex harmless from any and all liability as to the Audi vehicle. Wife shall obtain insurance on the Audi vehicle immediately upon transfer of title to the Wife. The Wife shall also keep her horse as her sole and separate property.

**11.9.   Furniture, Furnishings, Automobiles and Personal Property**: Each party shall hereafter own their respective clothing and personal effects and all household furniture, furnishings, automobiles, artwork, jewelry, collectibles and other personal property presently in each party's possession.   Each party releases any interest he or she may have in and to those items of furniture, furnishings and personal property hereafter belonging to the other.



AA

CAA

**11.10. Bank, Investment, Retirement, Brokerage and Other Financial**

**Accounts:** The Wife shall hereafter solely own any and all bank accounts, investment accounts, retirement accounts, brokerage accounts and other financial accounts held individually in the Wife's name or held jointly in the name of the Wife with another individual or in the name of an entity controlled by the Wife. The Husband shall hereafter solely own any and all bank accounts, investment accounts, retirement accounts, brokerage accounts and other financial accounts held individually in the Husband's name or held jointly in the name of the Husband with another individual or in the name of an entity controlled by the Husband.  Each party hereby waives releases and relinquishes any claims he and she may have in the aforesaid funds and accounts hereafter separately owned by the other party.

11.11.  **REPAINTEX COMPANY:**  The Husband owns an interest in the business known as REPAINTEX COMPANY, a Virginia Corporation (hereinafter "REPAINTEX COMPANY"). The Husband shall hereafter solely own all of his interest in REPAINTEX COMPANY and the Wife waives and releases any and all rights, title, interest and claims she may have in REPAINTEX COMPANY, in the Husband's stock in REPAINTEX COMPANY, and in any and all assets owned by REPAINTEX COMPANY. The Wife shall forthwith execute such documents as may be reasonably requested by the Husband to give full force and effect to this provision. Husband shall indemnify and hold Wife harmless from any and all corporate liabilities associated with REPAINTEX COMPANY.

11.12. **Ownership of Other Property:**



CAA

**11.12.1.** The Wife shall be the sole owner of any and all property, real or personal, tangible or intangible, and any interest in any asset, corporation or business entity, whether legal or beneficial or otherwise, tangible, intangible, contingent or actual, of any kind or description presently or hereafter titled in the sole name of the Wife, held for her benefit or in her possession that is not otherwise specifically disposed of in this Agreement.

**11.12.2.** The Husband shall be the sole owner of any and all property, real or personal, tangible or intangible, and any interest in any asset, corporation or business entity, whether legal or beneficial or otherwise, tangible, intangible, contingent or actual, of any kind or description presently or hereafter titled in the sole name of the Husband, held for his benefit or in his possession that is not otherwise specifically disposed of in this Agreement.

**12.    DEBTS OF THE PARTIES**

**12.1.** Each of the parties hereto represents that he or she will not hereafter contract any debt, charge or liability in the name or upon the credit of the other, or for which the other or the estate of the other might or could become liable and agrees, in any event, to assume responsibility for payment of any debt, charge or liability which may have been incurred.

**12.2.** Each of the parties further agrees to indemnify and hold the other and the estate of the other harmless and defend the other from and against any and all actions, causes of action, threatened actions, judgments, damages, penalties, attorney's fees, costs, expenses, and obligations of any nature whatsoever, arising out of or directly or indirectly related to, or associated with any debts or obligations for which the Husband



CAA

or Wife has assumed responsibility unless otherwise specifically provided for within the confines of this Agreement.

12.3. The parties stipulate that they have no other joint debts or obligations, and each party shall assume the responsibility for payment of those debts and obligations incurred in their individual names both prior to and after the date of the execution of this Agreement and each hereby indemnifies and holds the other harmless against liability therefore.

## 13.    WAIVER OF ALIMONY

The Wife hereby specifically, absolutely and irrevocably waives, releases and relinquishes any and all rights she may have now or in the future to receive alimony or support payments from the Husband including, but not limited to lump sum alimony, permanent alimony, durational alimony, rehabilitative alimony, bridge-the-gap alimony and all other types of alimony and financial support from the Husband. The Wife fully understands about her possible entitlement to alimony. However, having a specific understanding of all of her potential rights and the various meanings regarding the different types of alimony and spousal support, the Wife specifically waives all rights and entitlement thereto.

## 14.    TAX ISSUES

14.1    Federal Income Taxes for Tax Year 2019: It is agreed that the parties shall file a joint income tax return in accordance with the Internal Revenue Code of 1986, for the calendar tax year of 2019, with a filing status of married filing joint. It is agreed that the Husband shall be solely responsible for the federal income tax liability of the parties for the tax year ending December 31, 2019. Any refund resulting from the



CAA

overpayment of tax attributable to the tax year ending December 31, 2019 shall be shared equally by the parties. Each party shall indemnify and hold harmless the other party for such taxes, liabilities, deficiencies, assessments, penalties, or interest due thereon or for the omission of taxable income or claim of erroneous deductions of the applicable party.

14.2 **Federal Income Taxes for Tax Year 2020**: For tax year 2020, each party shall file an individual income tax return in accordance with the Internal Revenue Code. Unless otherwise specified in this Agreement, and in addition to income attributable to each party's respective nonmarital property, each party must report as the party's income one-half of all income attributable to marital property, including earnings from personal services received on or before the date of the dissolution of the marriage. Additionally, each party may take credit for all of the reporting party's estimated tax payments and federal income tax payroll withholding deductions occurring after the date of the dissolution of the marriage, and, to the extent allowed by law, all deductions, exemptions, credits, and adjustments attributable to his or her income and expenses after the date of the dissolution of the marriage. Each party shall timely pay his or her tax liability in connection with the tax return filed by such party. Any refund received as a result of a party's tax return shall be the sole property of the party filing such tax return. Each party shall indemnify and hold harmless the other party for such taxes, liabilities, deficiencies, assessments, penalties, or interest due thereon or the omission of taxable income or claim of erroneous deductions of the applicable party.

14.3 **Other Tax Provisions**

14.1.1 **Attorney is Not Tax Expert**: The parties acknowledge that any attorney involved with this Agreement does not claim to be an expert in tax matters.

AA

CAA

Each party states that he or she has consulted or has had the opportunity to consult with a tax professional to fully evaluate the tax implications and consequences of this Agreement.

**14.1.2 Request for Information and Cooperation**: It is agreed that each party shall provide any information reasonably necessary to prepare federal income tax returns, within thirty (30) days of receipt of a written request for the same. Each party shall reasonably cooperate with the other in the preparation of income tax returns as set forth hereinabove. Within five days of receipt of written notice from the other party, each party will allow the other party access to these records in order to respond to an IRS examination or request for information. Purposes for which access to such records will be granted includes, but is not limited to, the determination of acquisition dates or tax basis, and such access shall include the right to copy the records.

**14.1.3 Preservation of Information**: Each party shall preserve for a period of seven years from the date of the filing of the applicable tax return, all financial records relating to the marital property. Each party shall preserve indefinitely, any records which determine or affect the tax basis in any marital property.

**14.1.4 No Waiver of "Innocent Spouse"**: The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

15.    **BINDING EFFECT OF AGREEMENT**

All provisions of this Agreement shall be binding upon the parties, their respective personal or legal representative, heirs, next of kin, executors, administrators or assigns.

## 16.    ENFORCEMENT OF AGREEMENT/CHALLENGE TO AGREEMENT

16.1. In the event that either party wrongfully takes any action that is adverse to the other party, or fails to comply with the terms of this Agreement (hereinafter "Violating Party"), the Violating Party shall be notified in writing by the aggrieved party of said violation or non-compliance. The Violating Party shall have fifteen (15) business days from notification to cure the violation or non-compliance or remedy it. After fifteen business days, if the violation or non-compliance has not been cured or corrected or, in the case of a non-remedied breach, the aggrieved may present the matter to a court of competent jurisdiction for resolution. The parties also agree to mediate any dispute prior to initiating a lawsuit.

16.2. In the event either party challenges the validity or operation of this Agreement in any action or proceeding, including, but not limited to, any action for declaratory relief, the prevailing party shall be entitled to recover from the non-prevailing party his or her reasonable attorneys' fees and costs, and other related fees and costs, including, but not limited to the costs of a party's consultants, advisors, experts and accountants arising therefrom and all fees and costs which are incurred in mediation, trial court, post-judgment proceedings or any appellate proceedings.

## 17.    CONSTRUCTION OF AGREEMENT IN DRAFTING

This Agreement was negotiated by the parties. It is stipulated and agreed that this Agreement shall be construed as being jointly prepared and written by all the parties. The fact that Husbad's lawyer prepared the actual final drafting shall not be construed as having been a document created by that attorney for purposes of having any ambiguities construed against that party.



CAA

### 18.   CONFIDENTIALITY

The terms and provisions of this Agreement are strictly confidential.  None of the parties shall disclose the terms or provisions of this Agreement to any third party for any purpose, unless otherwise legally required to do so, and/or other than what is entirely and reasonably necessary to enforce compliance with or implementation of this Agreement.

### 19.   ATTORNEYS' FEES, SUIT MONIES AND COSTS

Any costs of court, including the filing fee for the petition for dissolution, will be borne by the party incurring the same. Each party will be responsible for his or her own attorney's fees and costs and other professional fees and costs incurred herein.

### 20.   INCORPORATION   INTO   FINAL   JUDGMENT/SURVIVAL   OF AGREEMENT

This Agreement shall be offered into evidence in the pending action in the Miami-Dade County Court as the full and final settlement Agreement regarding all issues between the parties, and shall be fully binding on the Husband and Wife. The parties shall jointly request that the Court approve this entire Agreement and, upon approval, this Agreement shall be incorporated into and made part of the Final Judgment that will be entered by the Court. However, notwithstanding such incorporation into the Final Judgment, this Agreement shall not be merged in but shall survive the Final Judgment and be binding on the parties for all time.

### 21.   CAPTIONS

Paragraph captions have been used throughout this Agreement for convenience and reference only, and are not intended to and shall not be used in any

manner whatsoever in the construction and interpretation of this Agreement or any provisions hereof.

**IN WITNESS WHEREOF**, the parties have set their hands and seals this ___23rd___ day of June, 2020.

Witnesses:

_____

GAUDY Encarnacion
Print Name

_____

Sonia Alvarez
Print Name

**ANGELA ACOSTA**

_____
) SS:
_____

BEFORE ME, the undersigned authority, personally appeared **ANGELA ACOSTA**, who, after being duly sworn, deposes and says that she has executed the foregoing Marital Settlement Agreement freely and voluntarily and for the uses and purposes therein described.

**SWORN TO AND SUBSCRIBED** before me this ___23rd___ day of June, 2020.

JENNIFER PEREZ
Notary Public, State of Florida
Commission# GG 277251
My comm. expires Nov. 15, 2022

NOTARY PUBLIC or DEPUTY CLERK

Jennifer Perez
[Print, type, or stamp commissioned name of notary or deputy clerk]

X  Personally known
___ Produced identification
Type of identification produced_____

Carlos Acosta

Print Name

**CARLOS AUGUSTO ACOSTA**

AA

CAA

Page 22 of 23

_Angela Acosta_

**Print Name**

ANGELA ACOSTA

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          )
                     ) SS:
                     )

BEFORE ME, the undersigned authority, personally appeared **ANGELA ACOSTA**, who, after being duly sworn, deposes and says that she has executed the foregoing Marital Settlement Agreement freely and voluntarily and for the uses and purposes therein described.

**SWORN TO AND SUBSCRIBED** before me this 23rd day of June, 2020.

JENNIFER PEREZ
Notary Public, State of Florida
Commission# GG 277251
My comm. expires Nov. 15, 2022

_____
NOTARY PUBLIC or DEPUTY CLERK

Jennifer Perez
[Print, type, or stamp commissioned name of notary or deputy clerk]

✓ Personally known
___ Produced identification
___ Type of identification produced_____

STATE OF FLORIDA          )
                          ) SS:
COUNTY OF MIAMI-DADE      )

BEFORE ME, the undersigned authority, personally appeared **CARLOS AUGUSTO ACOSTA**, who, after being duly sworn, deposes and says that he has executed the foregoing Marital Settlement Agreement freely and voluntarily and for the uses and purposes therein described.

**SWORN TO AND SUBSCRIBED** before me this ____ day of June, 2020.

_____
NOTARY PUBLIC or DEPUTY CLERK

_____
[Print, type, or stamp commissioned name of notary or deputy clerk]

___ Personally known
___ Produced identification
___ Type of identification produced_____

AA

CAA